UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

ELIZABETH MCGANN,

                Plaintiff,                    **MEMORANDUM**
                                                      **AND ORDER**
     -v.-                                    06-CV-527 (DRH) (MLO)

TRAVELERS PROPERTY CASUALTY CORP.
WELFARE BENEFIT PLAN and TRAVELERS
PROPERTY CASUALTY CORP. in its capacity as
Plan Administrator of TRAVELERS PROPERTY
CASUALTY CORP. WELFARE BENEFIT PLAN,

                Defendants.
───────────────────────────────────────────────

**APPEARANCES:**

**For the Plaintiff:**
**Law Offices of Wayne J. Schaefer, LLC**
48 South Service Road, Suite 102
Melville, New York 11747
By: Wayne J. Schaefer, Esq.

**For the Defendants:**
**Lester Schwab Katz & Dwyer, LLP**
120 Broadway
New York, New York 10271-0071
By: Allan M. Marcus, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff Elizabeth McGann ("Plaintiff") brings this action seeking to recover long-term disability benefits under her employer's benefit plan. Both Plaintiff and defendants Travelers Property Casualty Corp. ("Travelers") and Travelers Welfare Benefit Plan (the "Plan") (collectively, "Defendants") have moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons stated below, both motions are denied without prejudice to renew upon the completion of limited discovery.

**BACKGROUND**

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted.

*Plaintiff's Injury at Work*

Plaintiff was employed as an automobile no-fault insurance claims representative for Travelers. On May 10, 2004, Plaintiff suffered a back injury at work while lifting a claim file. She returned to work after a short absence but left again on October 6, 2004, after allegedly re-injuring her back. She received short-term disability benefits for the maximum period, through January 5, 2005. On December 14, 2004, Plaintiff filed a claim for long-term disability benefits provided for under the Plan. Plaintiff also filed a Workers' Compensation ("WC") claim with St. Paul Travelers, her employer's WC carrier.

*The Plan*

Travelers established and maintains the Plan to provide long-term disability benefits to its eligible employees. The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Metropolitan Life Insurance Company ("MetLife") is the Plan's claim administrator and also funds Plan benefits through a group policy of insurance. The Plan grants MetLife "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (R. at 0247.)[1]

The Plan defines "Disability" and "Disabled" as:

[D]ue to sickness, pregnancy or accidental injury, you are

---

[1] References to "R." refer to the administrative record filed in this case.

>receiving Appropriate Care and Treatment from a Doctor on a
>continuing basis[] and during the Elimination Period and the next
>24 month period, you are unable to perform all of the material
>duties of your Own Occupation for any employer in your Local
>Economy.

(*Id.* at 0209.) After the Elimination Period and the first 24 months of benefits, the definition of disability becomes stricter:

>[Y]ou are unable to perform all the material duties of any gainful
>occupation for which you are reasonably qualified taking into
>account your training, education, experience and Predisability
>Earnings.

(*Id.*)

The Plan requires that a claimant provide documented proof of disability "satisfactory to [MetLife]." (*Id.* at 0230.) As claim administrator, Met Life is responsible for initially reviewing claims and determining benefits eligibility. If a claim is denied, the claimant may appeal to MetLife. (*Id.* at 0245-47.)

***MetLife's Denial of Long-Term Benefits***

By letter dated January 4, 2005, MetLife denied Plaintiff's claim for long-term disability benefits, relying, in part, on the report of Dr. Andrew Miller, an independent orthopedic surgeon, who examined Plaintiff at the bequest of Travelers' WC carrier. In his report dated November 24, 2004, Dr. Miller diagnosed Plaintiff with "lumbar spine sprain/strain" and concluded as follows: "There is evidence of mild disability in regards to the lower back. [Plaintiff] is capable of working and performing the activities of daily living with restrictions to be placed on heavy lifting and carrying over 15 lbs." (*Id.* at 077.)

MetLife's denial letter was written by K. Ryan Conklin ("Conklin"), Disability Case Manager, and provides, in pertinent part, as follows:

> Based on the extensive review of your claim we have determined that you do not meet the definition of disability per your employer's plan.
>
> In reference to your disability claim indicated above, a review of your file indicates that you have been out of work from your position as a Claims Representative since October 6, 2004. During this period you had a diagnosis of lumbar intervertebral disc displacement. The Independent Medical Examiner's (IME) report stated that you have a mild disability of the lower back, but that you are capable of working and performing the activities of daily living with the restriction of not lifting over 15 pounds. Your job does not require you to lift objects over 15 pounds.
>
> It is concluded that the information does not substantiate the presence of any functional impairment resulting in your inability to perform the basic work-related functions of your *own occupation* as Claims Representative for *any employer*.

(*Id.* at 0073.)

### *Plaintiff's Claims That MetLife's Claim Determination Process was Flawed*

Plaintiff alleges that in denying her long-term disability benefits, Conklin did not actually exercise any discretion but rather followed the direction of Kim Diaz ("Diaz"), a case manager at St. Paul Travelers, Traveler's WC carrier. In support of her argument, she relies in part on the administrative record as well on extrinsic evidence, viz. her own affidavit together with various attachments.

Plaintiff claims that on October 29, 2004, she received a telephone call from Kimberly Diaz ("Diaz"), a St. Paul Travelers WC Claim Representative, who advised Plaintiff that she was expected to return to work on Monday, November 1, 2004. (Pl.'s Aff., dated Jan. 29, 2007 ("Pl.'s Aff."), ¶ 2.) Plaintiff responded that her orthopedist instructed her to remain out of work until her next appointment. (*Id.*) According to Plaintiff, Diaz "became quite annoyed" and asked Plaintiff whether Danielle Holtzwarth was her daughter. (*Id.*) Plaintiff responded that

she was and asked Diaz why she wanted to know. (*Id.*) Diaz told Plaintiff that she had been trying to reach Plaintiff's daughter, a former Travelers employee, about her WC claim and then asked Plaintiff whether her daughter was working. (*Id.*) Plaintiff advised Diaz that her questions were inappropriate and that she would not answer them. (*Id.*) Plaintiff claims that the conversation ended "abruptly with [] Diaz hanging up the phone on [Plaintiff]." (*Id.*)

On December 9, 2004, Plaintiff allegedly received a telephone call from Conklin, who informed her that her short-term disability benefits would expire on January 5, 2005, but that "due to the medical evidence supplied by [her] doctors, the short-term disability benefits would be 'rolled' into an award of [long-term] disability benefits[] effective January 6, 2005." (*Id.* ¶ 3.) In support of this claim, Plaintiff cites to pages 163-64 of the administrative record, part of MetLife's claim file for Plaintiff, which reflects that on December 4, 2004: (1) Conklin called Plaintiff and told her she would receive the maximum amount of short-term disability benefits and that MetLife was waiting on "WCCM", presumably Travelers' WC division, to follow up with wage information; (2) Conklin advised Plaintiff that when she receives the long-term disability packet, "she should fill it out, and send it back as soon as possible"; and (3) Conklin called WCCM and requested wage information for Plaintiff because he had "bridged [Plaintiff's] claim to [long-term disability], and that he needs info by max duration date of 01/05/05," the date Plaintiff's short-term disability benefits were to expire. (R. at 0164.) Plaintiff claims that these notations in MetLife's claim file demonstrate that Conklin had approved Plaintiff's claim for long-term benefits and was merely waiting to receive Plaintiff's wage information from Travelers' WC carrier before finalizing her claim.

On December 20, 2004, Plaintiff received a copy of Dr. Miller's report, dated

November 24, 2004. (Pl.'s Aff. ¶ 4.) By letter dated January 4, 2005 and written by Conklin, MetLife denied Plaintiff's claim for long-term disability benefits.

On January 5, 2007, the last day of Plaintiff's eligibility for short-term disability benefits, Plaintiff allegedly received a telephone call from Diaz, who informed her that based on Dr. Miller's report, Plaintiff was required to return to work the next day or be terminated. (*Id.* ¶ 5.) The administrative record reflects that on January 5, 2007, at 4:35 p.m., Diaz sent an e-mail to Travelers personnel informing them that because Plaintiff's only restriction is no lifting over 15 pounds, she would not be eligible for long-term disability benefits "as she is able to work light duty." (R. at 0278.) At 6:23 p.m. that same day, Conklin sent an e-mail to Diaz and Travelers personnel that "[a]s [Diaz] stated, she was released by the IME to RTW light duty, and does not support a[] [long-term disability] approval." (*Id.* at 0282.)

Later that same day, Conklin called Plaintiff and advised her that her claim for long-term disability benefits had been denied. (Pl.'s Aff. ¶ 6.) Plaintiff states as follows:

> I became upset and pressed him as to how he could justify the denial, given the medical records from my doctors which he had previously relied on. Mr. Conklin stated that Travelers was pulling the strings and had directed him to deny the [long-term disability] claim based on the Miller report. I pointed out that the Miller report had a number of discrepancies; not the least of which was that my disability arose from a motor vehicle accident (which was untrue). Mr. Conklin stated that there was nothing he could do; that the denial was coming from Travelers. Finally, he stated that if there had not been a worker's compensation claim involved, there would be no issue; all my medical records confirmed that I was entitled to [long-term disability] benefits. He closed by strongly recommending that I appeal the denial.

(*Id.*)

Plaintiff was thereafter advised by Travelers Human Resources that her

employment had been terminated due to her failure to return to work.  (*Id.* ¶¶ 7-12.)

*Defendants' Response to Plaintiff's Claims of*
*Impropriety in the Claims Determination Process*

In response to Plaintiff's claims, Defendants submit the affidavit of Jill Birmingham ("Birmingham"), a Claims Support Specialist in MetLife's group disability benefits claims department.  Birmingham states that MetLife and Travelers have an arrangement called Synchrony, which was established in 1988 and continues to the present, to "integrate absence management for employers, with Metlife handling services relating to short-term and long-term disability benefits and Travelers Property Casualty Corp. handling services relating to WC."  (Birmingham Aff., dated Feb. 12, 2007, ¶¶ 4-5.)  Under the Synchrony arrangement, MetLife and Travelers exchange medical and other information about claims to avoid duplication of effort.  (*Id.* ¶ 6.)  Such exchange is authorized by release forms claimants sign.  (*Id.*)  Birmingham further explains that when a claimant files a claim for both WC and short-term or long-term disability benefits, WC is considered "primary" by MetLife, i.e., MetLife relies on Travelers to gather initial medical information about that claim.  (*Id.* ¶ 7.)  "MetLife can and does gather additional medical information if necessary to make its benefit determination."  (*Id.*)  She further claims that MetLife's decisions with respect to short-term and long-term disability benefits "are entirely independent of Travelers' decisions with respect to WC claims since the definitions of and eligibility standards for" them differ.  (*Id.* ¶ 8.)  Finally, she states that "[a]s a matter of routine, MetLife communicates the status of [short-term disability] and [long-term disability] claims to the claimant's employer."  (*Id.* ¶ 9.)

Defendants also submit the affidavit of Grace Corbin ("Corbin"), a State Insurance Department Complaint Consultant for MetLife in the group disability benefits claims

department, who denied Plaintiff's claim on appeal, *see infra*. Corbin states as follows:

> In the "diary notes" portion of the claim file for [Plaintiff's] claim, . . . Conklin, who made the initial claim determination, used the term "bridge claim to LTD." This is a term used routinely by MetLife's disability claims personnel to mean that, when a claimant's short-term disability ("STD") claim is nearing its maximum duration, the case manager transfers the STD claim information stored on MetLife's computer system to create a potential LTD claim. The term "bridge to LTD claim" does not mean or imply that the LTD claim had been or would be approved. Rather, the "bridging" procedure was just the start of the LTD benefit claim adjudication process.

(Corbin Aff., dated Feb. 12, 2007, ¶ 6.) She further states that Conklin is no longer a MetLife employee. (*Id.* ¶ 7.)

### *Plaintiff's Appeal of MetLife's Denial of Long-term Benefits*

On June 3, 2005, Plaintiff appealed the denial of long-term disability benefits. (*Id.* at 0069-0079.) Plaintiff noted that in denying benefits, MetLife had relied upon Dr. Miller's report, which was prepared in connection with Plaintiff's pending claim for WC benefits. (*Id.* at 0069.) The WC Judge, however, had declared Dr. Miller's report inadmissible due to a violation of the WC law. (*Id.* at 0069.) Accordingly, Plaintiff argued that the only available and admissible evidence reflected Plaintiff's total disability. (*Id.* at 0070.)

Metlife referred the entire file to Dr. Peter Freedman, an independent orthopedic surgeon. Dr. Freedman reviewed Plaintiff's file but did not examine her. In his report, Dr. Freedman concluded that "[t]here is no specific job description but it would appear that if a job description was truly sedentary and allowed frequent positional changes, [Plaintiff] might qualify for that." (*Id.* at 0017.)

By letter dated June 28, 2005 and written by Corbin, MetLife upheld its initial

claim denial, finding that "[a]lthough Dr. Miller's report may be unacceptable in regard to her worker's compensation claim, disability is a completely different issue; therefore, Dr. Miller's report was reviewed and considered in conjunction with all other medical information on file." (*Id.* at 0013.)  MetLife concluded that Plaintiff's job as Claims Representative was "sedentary in nature" (*id.* at 0012), and that based upon "the medical documentation in [Plaintiff's] file and the opinion of the [Independent Physician Consultant]" (*id.* at 0013), there was inadequate evidence to establish that Plaintiff was unable "to perform the duties of her sedentary occupation." (*Id.*)

In her affidavit submitted in support of Defendants' instant motion, Corbin notes that during her review and investigation of Plaintiff's long-term disability claim, she did not consult with St. Paul Travelers, the WC carrier for Plaintiff's employer. (Corbin Aff. ¶ 8.)

***The Instant Action***

On February 7, 2006, Plaintiff initiated the instant action. Her Complaint asserts two causes of action, viz. declaratory judgment that Plaintiff is disabled within the meaning of the Plan and thus entitled to long-term disability benefits, and an award of attorneys' fees. Both Plaintiff and Defendants have moved for summary judgment. For the reason stated below, both motions are denied without prejudice to renew consistent with this opinion.

## DISCUSSION

**I.** ***Summary Judgment Standard***

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d

712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the

respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.   *Standard of Review Governing MetLife's Determination Denying Plaintiff's Claim for Long-Term Disability Benefits*

Before reaching the merits of the parties' arguments regarding the reasonableness of MetLife's decision to deny Plaintiff long-term disability benefits under the Plan, the Court must first address the threshold issue of what standard of review applies to MetLife's determination. In *Firestone Tire and Rubber Co. v. Bruch*, the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989); *see also Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999). If such discretion is given, a district court must review the administrator's denial of benefits deferentially, and may reverse only if the arbitrator's decision was arbitrary and capricious.[2] *See*

---

[2] Under the arbitrary and capricious standard of review, the Court may overturn a decision to deny benefits only if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler*, 181 F.3d at 249 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). This scope of review is narrow and the Court is not

*id.*

Plaintiff concedes that the Plan grants MetLife "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (R. at 0247.) Nevertheless, she argues that de novo review is appropriate here because: (1) MetLife's claim determination process was plagued with conflict of interest, irregularities and flaws; and (2) MetLife failed to exercise actual discretion in denying Plaintiff's claim but rather "rubber-stamped" Travelers' denial of Plaintiff's WC claim. Because these claims are related, they will be discussed in tandem.

    **A.**    **Conflict Exception to the Arbitrary and Capricious Rule**

Under Second Circuit law, an exception to applying the arbitrary and capricious standard of review may be invoked if the plaintiff establishes that that administrator had an actual conflict of interest and that such conflict in fact "affected the reasonableness of the administrator's decision." *Whitney v. Empire Blue Cross & Blue Shield*, 106 F.3d 475, 477 (2d Cir. 1997) (citations and internal quotation marks omitted). The burden of proof on these two requirements falls to the plaintiff. *See Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000). "If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo." *Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1256 (2d Cir. 1996). If the plaintiff cannot carry this burden, any conflict the administrator has is simply one more factor to be considered in determining whether the challenged decision was arbitrary and capricious. *Pulvers*, 210 F.3d at 92.

---

permitted to substitute its own judgment for that of the decision maker. *Pagan*, 52 F.3d at 442.

### B. *Plaintiff's Allegations of Conflict*

Plaintiff alleges that MetLife operated under a conflict of interest in making its determination because it had a financial interest in the outcome of the benefits decision and therefore served as both plan administrator and payor of Plaintiff's claim. The Second Circuit has repeatedly held that the fact that a defendant "served as both plan administrator and plan insurer, although a factor to be weighed in determining whether there has been an abuse of discretion, is alone insufficient as a matter of law to trigger stricter review." *Id.* at 92 (citation and internal quotation marks omitted). Therefore, Plaintiff's allegations that MetLife had a conflict of interest solely because of its financial interest does not justify application of a de novo standard of review.

As discussed above, however, Plaintiff has made additional claims of conflict allegedly plaguing MetLife's determination process. For example, Plaintiff alleges that "MetLife decided to forgo any substantive evaluation of [Plaintiff's] claim and instead simply rel[ied] on the determination of Travelers workers' compensation claim manager, Ms. Diaz, as to whether [Plaintiff] was entitled to [long-term disability] benefits." (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 7-8.) Plaintiff further alleges that despite Conklin's representations to her that her short-term disability benefits would be bridged to long-term benefits, Conklin later told her that "Travelers was pulling the strings and had directed him to deny the [long-term disability] claim" and that "there was nothing he could do." (Pl.'s Aff. ¶ 6.) Finally, Plaintiff claims that the record fails to reveal the existence of any written procedures maintained by MetLife for determining long-term disability claims. (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 7.)

In response, Defendants have submitted evidence rebutting Plaintiff's claims of conflict on Conklin's part. For example, they have presented evidence that any reference by Conklin to "bridging" Plaintiff's benefits from short-term to long-term merely signified that MetLife was beginning the long-term benefit claim adjudication process and not that such benefits had already been approved. Notably absent from Defendants' submissions is any testimony by Conklin, who is no longer a MetLife employee. Much of the evidence relied on by both sides falls outside of the administrative record.

### C. *Plaintiff has Demonstrated Good Cause to Look Outside the Administrative Record Regarding her Claims of Conflict*

Typically, in determining whether claim determinations are arbitrary and capricious, district court review is limited to the administrative record. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995). But the question of whether MetLife operated under a conflict of interest in denying Plaintiff's claim is distinct from the issue of the reasonableness of MetLife's decision. In analyzing the former, and consistent with the recognition that evidence outside the administrative record may be considered upon good cause shown, federal courts have permitted discovery in ERISA cases to assist the courts in determining whether the plan administrator's decision was tainted by a conflict of interest. *See Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 174 (2d Cir. 2001) (finding that district court would "not be confined to the administrative record" in determining whether the plan administrators' "decision to deny his coverage request was tinged by a conflict of interest" as "such an issue [] is distinct from the reasonableness of the plan administrators' decision"; noting that plaintiff hopes to prove as much through discovery); *Peck v. AETNA Life Ins. Co.*, No. Civ.A.3:04-CV1139, 2005 WL 1683491, at *5 (D. Conn. July 19, 2005) (finding that in order for plaintiff to establish that a conflict of

interest exerted actual influence over administrator, Plaintiff must be given opportunity to collect evidence via discovery); *Allison v. UNUM Life Ins. Co.*, No. CV 04-0025, 2005 WL 1457636, at *13 (E.D.N.Y. Feb. 11, 2005) (permitting discovery as to whether administrator was conflicted and whether that conflict influenced the determination); *Sheehan v. Metropolitan Life Ins. Co.*, No. 01 CIV. 9182, 2002 WL 1424592, at *4 (S.D.N.Y. June 28, 2002) (noting that a plaintiff must demonstrate a conflict of interest or other good cause to present evidence outside the administrative record and therefore concluding that a proper subject for discovery was whether the plan administrator was conflicted when it terminated the plaintiff's benefits); *see also Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 520 (1st Cir. 2005) ("Where the challenge is not to the merits of the decision to deny benefits, but to the procedure used to reach the decision, outside evidence may be of relevance.  For example, evidence outside the administrative record might be relevant to a claim of personal bias by a plan administrator or of prejudicial procedural irregularity in the ERISA administrative review procedure."); *Farley v. Arkansas Blue Cross and Blue Shield,* 147 F.3d 774, 776 n. 4 (8th Cir. 1998) (noting that "conducting limited discovery for the purpose of determining the appropriate standard of review does not run afoul of the general prohibition on admitting evidence outside the administrative record for the purpose of determining benefits").

    Defendants contend that Plaintiff has failed to establish good cause to expand the administrative record on the issue of conflict because: (1) Plaintiff failed to raise this issue during MetLife's appeal process; and (2) Plaintiff's "self-serving affidavit" regarding statements allegedly made to her by Conklin is inadmissible because the statements at issue are hearsay. (Defs'. Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. at 10.)  After careful consideration, the

Court finds Defendants' arguments to be without merit.

With regard to Plaintiff's failure to raise the issue of conflict on appeal, Plaintiff initially argues that because she "was not in possession of the administrative file during her appeal, she [was] not . . . privy to the exact circumstances surrounding the disposition of her claim." (Pl.'s Reply Mem. at 7-8.) The Court does not find this argument persuasive as the heart of Plaintiff's conflict claim rests on her conversation with Conklin, which occurred on January 5, 2005, well before she filed her appeal. (*See* Pl.'s Aff. ¶¶ 5-6.) Nonetheless, for the reasons that follow, the Court finds that Plaintiff's failure to raise this issue during MetLife's appeal process is not fatal to her present application to have this Court review extrinsic evidence.

Plaintiff contends that she didn't raise the conflict issue during her appeal because any attempt to do so "would have been futile" as it "would have called upon the defendants to sit in judgment of their own basic procedures for adjudicating claims." (Pl.'s Reply Mem. at 8.) While the Court is underwhelmed by Plaintiff's subjective determination that any undertaking on her behalf in this regard would have been "futile", there is nothing in the record to suggest that MetLife would have been in a position to entertain such a claim. The Court recognizes that the Plan provides that as part of an appeal, a claimant "may submit any written comments, documents, records, or other information relating to [his or her] claim." (R. at 0246.) Although this language is broadly framed, it would seem that the issue of whether a Plan Administrator is conflicted, which is purely a creature of decisional law, would fall outside the ambit of an Administrator's authority, which is to review the evidence before it and reach a determination as to the legitimacy of a party's claim. Neither side presents the Court with any guidance on this issue. Although Defendants cite two cases for the general proposition that evidence beyond the

administrative record should not be admitted where the plaintiff had ample opportunity to submit such evidence during the administrator's appeal process, these cases are not relevant to the issue at hand as the records sought to be introduced in those cases pertained to medical evidence and did not bear directly on the issue of conflict. *See Muller v. First UNUM Life Ins. Co.*, 341 F.3d 119, 125-26 (2d Cir. 2003) (plaintiff sought to introduce an affidavit from her psychiatrist, letters from a treating physician, and a decision of the Social Security Administration regarding plaintiff's claim for federal disability benefits); *Scannell v. Metropolitan Life Ins. Co.*, No, 03 CV 990, 2003 WL 22722954, at *4 and n. 62 (S.D.N.Y. Nov. 18, 2003) (plaintiff sought to introduce a revised job description and an affidavit of her treating physician). Moreover, the absence in the record of MetLife's written procedures in this regard, if any, further supports the need to look beyond the present record in resolving the issue of conflict. *Cf. Locher v. UNUM Life Ins. Co. of Am.*, 389 F.3d 288, 296 (2d Cir. 2004) ("A failure to maintain written procedures was considered-and found to be significant-in our finding of good cause in *DeFelice* [*v. Am. Int'l Life Assurance Co. of N.Y.*], 112 F.3d [61,] 66 [2d Cir. 1997]. Where sufficient procedures for initial or appellate review of a claim are lacking, there exist greater opportunities for conflicts of interest to be exacerbated and, in such a case, the fairness of the ERISA appeals process cannot be established using only the record before the administrator. In such circumstances, as we stated in *DeFelice*, the district court may assume an active role in order to ensure a comprehensive and impartial review of the case."). Accordingly, the Court finds that Plaintiff's failure to raise the issue of conflict during her appeal of MetLife's denial of her claim does not, based upon the present record, preclude Plaintiff from raising the issue before this Court.

Finally, the Court rejects Defendants' contention that Conklin's alleged out-of-

court statements regarding his inability to grant Plaintiff's claim because of pressure from Travelers are inadmissible hearsay. Conklin's statements are party admissions and thus, by definition, are not hearsay. *See* Fed. R. Evid. 801(d)(2)(A) (statement not hearsay if it "is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity").

### D. The Parties' Motions for Summary Judgment are Denied Without Prejudice to Renew Pending Limited Discovery on the Issue of Conflict

After a review of the administrative record and the evidence submitted thus far by both parties on the issue of conflict, the Court finds that Plaintiff has demonstrated good cause to look beyond the administrative record and conduct discovery on this limited issue, viz. whether Plaintiff has presented evidence tending to establish that the Plan administrator was conflicted and that the procedures employed in arriving at the claim determination were flawed. Because the standard of review applicable to this Court's review of MetLife's determination to deny Plaintiff long-term disability benefits will turn on Plaintiff's ability to demonstrate that a conflict of interest influenced MetLife's decision, the Court cannot determine the proper analysis and applicable standard until such discovery has been completed. Accordingly, the Court denies both parties' motions for summary judgment without prejudice to renew upon the completion of discovery on this limited issue, i.e., whether MetLife had an actual conflict of interest and whether that conflict in fact "affected the reasonableness of [MetLife's] decision." *Whitney*, 106 F.3d at 477.

## CONCLUSION

For the foregoing reasons, both Plaintiff's and Defendants' motions for summary judgment are DENIED without prejudice to renew upon the completion of limited discovery

consistent with this decision. This matter is referred to Chief Magistrate Judge Michael L. Orenstein for the issuance of a discovery schedule.

**SO ORDERED.**

Dated: Central Islip, N.Y.
September 21, 2007

/s
Denis R. Hurley,
United States District Judge